UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DAVID ARKORFUL,

                                                    :
                    Plaintiff,

                                                    :
        -against-
                                                    :
                                                            COMPLAINT

NEW YORK CITY DEPARTMENT OF            :
EDUCATION,                                                  Docket No.:

                                                    :       JURY TRIAL DEMANDED
                            Defendants.
-----------------------------------------------------------x

        Plaintiff David Arkorful (hereinafter "Arkorful") submits the following

Complaint, through his counsel, Noah A. Kinigstein, as follows:

**Preliminary Statement**

        1. Plaintiff, David Arkorful, files this Complaint under 42 U.S.C. §1983, The

Civil Rights Act of 1964, 42 U.S.C. §2000-e et. seq., the Americans with Disabilities

Act, 42 U.S.C. §12101 et. seq., the New York State Executive Law, New York

Executive Law §296 et. seq., and the New York City Human Rights Law, New York

City Administrative Code §8-101, et. seq., because said actions and omissions of the

New York City Department of Education violated the plaintiff's rights as stated under

the New York State Human Rights Law, New York Executive Law §296 et. seq., the

1

New York City Human Rights Law, Administrative Code §8-101, et. seq., the Civil Rights Act of 1964, 42 U.S.C. 2000-e et. seq. the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq. and 42 U.S.C.§1983 in that the New York City Department of Education, discriminated and retaliated against him because of his national origin, race, color disability and retaliated against him when he engaged in protected speech regarding the discrimination he was experiencing. Finally, the New York City Department of Education is being sued for its policy, practice and/or custom of failing to train, endorsing or omissions in affirmatively dealing with discrimination and retaliation and failing to accommodate or discuss a reasonable accommodation regarding Arkorful's disability based on the extreme hostile and abusive work environment which resulted in his physical and psychological manifestations.

## <u>JURISDICTION</u>

2. This court has jurisdiction pursuant to 28 U.S.C. § 1343. The plaintiff further invokes the court's supplemental jurisdiction pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of the court that they form part of the same case or controversy.

3. Venue is proper in this district based on the general venue statute, 28 U.S.C. §1391.

2

## <u>NOTICE OF CLAIM AND EXHAUSTION OF</u>
## <u>ADMINISTRATIVE REMEDIES</u>

4. In or about December 28, 2016, Arkorful filed a complaint with the EEOC, and on or about March 20, 2018, he received a Right to Sue letter. This complaint is filed within 90 days of receiving the Right to Sue Letter.

5. In or about, May 10, 2018, Arkorful filed a Notice of Claim with the New York City Department of Education regarding his claims in this complaint. To date there has been no response.

## PARTIES

6. Arkorful is an individual who was born in Ghana. He is African/American. He is a citizen of the United States.

7. The New York City Department of Education (hereinafter "DOE") is an agency of the City of New York and the State of New York which is authorized pursuant to the New York State Constitution and the New York State Department of Education to effectuate the constitutional requirements to educate the children of the state of New York in compliance with the rules, regulations and standards of the New York State Department of Education. It has a principal place of business at 52 Chambers Street, New York, NY 10007.  Arkorful works in the Division of Instructional and Information Technology, (hereinafter "DIIT"), office in Kings

County, New York.

## FACTS

8. Plaintiff, Arkorful was born on March 18, 1965.

9. In 2006, Arkorful received his Bachelor of Science in Computer Science from Thomas Edison College in New Jersey. In addition, Arkorful has taken many classes and seminars in advanced Computer Science and he is certified with CISCO systems. Upon information and belief Arkorful is very skilled in the area of computer infrastructure.

10. In, or about, 2006, Arkorful began working for the DOE in the DIIT, as a Certified Wide Area Network (hereinafter "WAN") Administrator.

11. As a WAN Administrator, Arkorful was, and is, responsible for all aspects of the design implementation, monitoring and oversight of the DIIT's information technology infrastructure and communication networks. Since his employment in 2006, Arkorful has been responsible for integrating the computer networks of the New York City Public Schools and served as a liaison between the New York City School Construction Authority and the DIIT. As part of his job, and upon information and belief, Arkorful was responsible for saving the DOE millions of dollars by "insourcing" work that had been previously done by outside vendors.

4

12.  Throughout his employment, Arkorful has never been disciplined and all of his performance reviews have been satisfactory or more than satisfactory.

13. Although Arkorful's performance has been, upon information and belief, very strong, he has been subjected to discrimination because of his race, color, disability and/or national origin, to wit: he has not received the support that similarly situated non-individuals that were not his color, Black, race and national origin, African from Ghana, or retaliated against for speaking out about being discriminated against. Specifically, Arkorful has requested on many occasions, that the DOE provide him with the necessary employees or staff to assist in the many difficult tasks assigned to him and although similarly situated non Black, non-Ghanaian administrators were provided with said necessary employees . In addition, when Arkorful became disabled, based on the severe hostile work environment and attempted to discuss accommodations, which are regularly granted to similarly situated non Black and non-Ghanaian/Americans, the DOE failed or refused to discuss accommodations.  The DOE's failure, or refusal, to discuss an accommodation, resulted in various and other leaves to deal with the psychological and physical manifestations of being discriminated against.

14. In addition, and upon information and belief, although Arkorful did have subordinates assigned to him, his supervisor's repeatedly allowed subordinates to "opt out" of working on projects assigned to his team, which did not happen to similarly

5

situated administrators who were non-Black and/or non-Ghanaian-American, who were leading other teams. In specific, in 2015, Arkorful's team was responsible for integrating technology and communication networks for 19 newly constructed schools and 29 Universal Pre-K education centers, and although similarly situated non- Black and non-Ghanaian-American administrators would have, and had, subordinates work in a similar situation, Arkorful was required to work on said immense projects alone.

15. In or about 2014, Arkorful was diagnosed with work-related depression, and as a result of being over worked and being a victim of a hostile work environment and was required to take a two month leave of absence.

16. Upon Arkorful's return to work, and although he requested support  to complete the onerous tasks of his team, the DOE failed and/or refused to accommodate or correct the conditions which lead the over work which had required him to take the leave of absence.

17.  On March 1, 2015, Arkorful suffered a stroke and was admitted to the hospital for several days.

18. When Arkorful returned from his stroke, the DIIT failed to accommodate him, although requested by Arkorful and he continued to work at a feverish state without any staffing assistance and /or minimal or no support in a dissimilar manner from non-Black, non-Ghanian-American and/or non-disabled administrators.

6

19. In, or about, November 2015, the DIIT asked Arkorful to create a "Quality Assurance" group.

20. Arkorful did design said "Quality Assurance" group and was highly praised for his work.

21. Although he was told that he would receive appropriate support from the DOEto address the Quality Assurance matters, like similarly situated non-Black or non-Ghanaian-American would have had assigned, said subordinates that were assigned were allowed to "opt out", to wit; said subordinates were allowed to decide whether they would work on a particular project, when, upon information and belief, the DOE would not have permitted subordinates of other similarly situated non Black and/or non-Ghanaian-Americans to decide what projects they would work on and which they would simply "opt out".

22. Despite Arkorful's achievements and contrary to similarly situated non-Ghanaian-American , non-Black and/or non-disabled  administrators' promotions, he has not received a promotion.

23. On March 3, 2016, Arkorful was advised by his director, Frank Diomede, that he would now report to the manager, Eric Berger, of the School Construction Authority New Schools/"Quality Assurance" group that he had created.

24.   Mr. Berger is white and has less skills or experience than Arkorful. In addition, the group  Mr. Berger was promoted to manage was the very group that

Arkorful was asked to create and which he created. Arkorful was then demoted from a "team leader" of said group and listed as a "Quality Assurance Engineer", a lower title which, upon information and belief, made it more difficult to be promoted.

25. Upon information and belief, the promotion of Berger over Arkorful was, at least in part, discriminatory and retaliatory being based on Arkorful's race- Black/ Ghanaian, color,-Black and/or national origin, being a Ghanaian-American and further his disability as represented by both his depression and the required two months of medical leave he was required to take in response to his depression based on being over worked.

26. In or about March 10, 2016, Arkorful complained to Tom Kambouras, Chief Technology Officer, about Berger's promotion over him stating, upon information and belief that said promotion was discriminatory and retaliatory.

27. In or about March 2016, Arkorful filed a complaint with the Department of Human Resources of the New York City Department of Education, in which he stated, among other things that he was being discriminated and retaliated against.

28. Thereafter, Arkorful filed a complaint with the DOE. The DOE never, or refused to, investigate his claim of discrimination and retaliation, and said failure to or refusal to investigate his complaint violated the DOE's stated rules and regulations regarding the investigation of complaints of discrimination and retaliation. In addition and upon information and belief, the DOE conveyed confidential information

8

associated with the complaint which is also a violation of the rules and procedures of the DOE's Office of Equal Employment. Said refusal to investigate was retaliatory for his just complaints.

29. Immediately after filing his complaint and in or about April 2016, Arkorful was told by Diomedes, the director of the DIIT that he had to train Mr. Berger, the individual that was chosen to head the "Quality Assurance" group. During the meeting Arkorful asked Diomedes why he was passed over for the promotion while promoting Berger who was no qualified for the position. Diomedes did not give Arkorful an answer, but, upon information and belief, Diomedes then began to curse at Arkorful and stated, in sum and substance, "This is how we do things in America, and if you don't like it you can go to wherever you came from.".

30. In response to filing his complaints, both oral and written, Arkorful was harassed and subjected to a hostile work environment, to wit: being isolated and subjected to hyper-evaluation of his work, and retaliated against in the form of being written up for minor infractions such as being late for work because of train delays while similarly situated non-Ghanaian and/or non- Black administrators and non-disabled were not subject to similar write-ups. In addition, after Arkorful made his complaint to Kambouras, the Director of DIIT's Human Service Departments sent an e-mail to Arkorful's supervisor Joseph Davis  stating that he should start writing him up for late arrivals in a manner that was dissimilar to similarly situated non-Black

or non-Ghanaian-American, or non-disabled administrators and contrary to policy and practice of the DIIT. The edict to write him up in a dissimilar manner than other was retaliatory.

31. Arkorful did not and does not arrive late more than any other employees but was singled out in retaliation for his complaints about discrimination.

32. As a result of the extreme hostile work environment, and the intense mistreatment, Arkorful was then required to take a leave of absence from August 2016 to, in or about, December 2017.

33. In or about December 2017, Arkorful returned to work, only to be subjected to further retaliation and harassment in the form of a hostile work environment, including but not limited to, failure to provide support and an accommodation consistent with support and accommodation supplied to similarly situated non-Ghanaian, non-Black  and non-disabled administrators, removing him from health benefits  in a dissimilar manner that similarly situated non Ghanaian-American, non-disabled and/or non- Black administrators, stating that Arkorful was a part time worker and as such he was unable to take breaks that other similarly situated non-Black, non-disabled and/or non-Ghanaian-Americans routinely take and are allowed to take. In addition, the DOE refused to discuss or change his work schedules to accommodate his disability and refused to, and continues to refuse to discuss an accommodation. The DOE created a hostile work environment by

monitoring his whereabouts on video, by recruiting co-workers to follow him around in a surreptitious manner, skulking around the office, refusing both flex-time and an accommodation for part-time because of his disability while allowing the same accommodation for similarly situated non-Black and non-Ghanaian/Americans and non-disabled employees, and failing him to pay for the hours that he worked while not failing to pay similarly situated non-Black, non-disabled  and/or non-Ghanaian-Americans and non-disabled administrators .

## FIRST CAUSE OF ACTION PURSUANT TO 42 U.S.C. §1983

34. At all times material to this complaint the defendant,  DOE acting through its Division of Instructional and Information Technology had de facto policies, practices, customs and usages which were the direct and proximate cause of the unconstitutional conduct alleged herein.

35. At all times material to this complaint, defendant the DOE, acting through its Division of Instructional and Information Technology had de facto policies, practices, customs and usages of encouraging and/or tacitly sanctioning the use of unconstitutional conduct by officers and executive members of the DOE and the DIIT. These policies, practices, customs and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

11

36. At all times material to this complaint, the DOE acting through its Division of Instructional and Information Technology  had de facto policies practices, customs and /or usages of encouraging and/or tacitly sanctioning the unconstitutional conduct alleged in this complaint. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

37. As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, emotional distress, costs and expenses, and was otherwise damaged and injured.

### SECOND CAUSE OF ACTION PURSUANT TO THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000-e et. seq.

38. The plaintiff repeats and restates paragraphs one (1 ) through thirty-seven (37) and restates them as paragraph thirty-eight (38) herein.

39.  The actions and omissions of the defendant, the New York City Department of Education,  in discriminating and retaliating  against the plaintiff, Arkorful violated his rights as secured by the Civil Rights Act of 1964, 42 U.S.C. §2000-e et. seq. and as a result he was damaged.

### THIRD CAUSE OF ACTION PURSUANT TO NEW YORK HUMAN RIGHTS LAW, NEW YORK EXECUTIVE LAW  §296 et. seq., AND NEW YORK CITY HUMAN RIGHTS LAW, NEW YORK CITY ADMINISTRATIVE CODE ,§8-101 et. seq.

12

40. Plaintiff repeats and restates paragraphs one (1) through thirty-nine (39) and restates them as paragraph forty(40 ) herein.

41. The actions and omissions of the New York City Department of Education, were discriminatory and retaliatory and violated the plaintiff's rights under the New York State Human Rights Law New York Executive Law §296 et. seq., and the New York City Human Rights Law, New York City Administrative Code, §8-101 et. seq., and as such, the plaintiff has been damaged.

## FOURTH CAUSE OF ACTION

## PURSUANT TO THE AMERICAN WITH DISABILITIES ACT , 42 U.S.C. §12101 et.seq

42. The Arkorful repeats and restates paragraphs one( 1 ) through forty-one (41 ) and incorporate them as paragraph forty-two(42) herein.

43. The actions and omissions of the defendant DOE, in discriminating and retaliating against plaintiff  based on his disability and or perceived disability violates and violated that plaintiff's rights under the American with Disabilities Act, 42 U.S.C. §12101 et. seq. and as a result the plaintiff was damaged .

13

**WHEREFORE,** the plaintiff demands:

     1. Injunctive relief and/or declaratory judgment ;

     2. All back pay and back benefits which he has been deprived;

     3. Compensatory damages for the emotional harm the plaintiff suffered as a result of the discrimination and retaliation;

     4. Punitive damages for the outrageous, discriminatory and retaliatory actions of the defendants that discriminated and retaliated against the plaintiff;

     5. Costs;

     6. Pre- and Post- Judgment Interest;

     7. Attorney's Fees;

     8. Jury Trial;

     9. Any and all other relief this court deems just and appropriate.


Dated: New York, New York
     June 13, 2018

Noah A. Kinigstein (NK5326)
Attorney for Arkorful
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 285-9300
Fax.: (212) 385-2608
E-Mail: Nakasequal@aol.com